# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 165 - 2 | **DATE** | 3/21/2003 |
| **CASE TITLE** | USA vs. PRESBITERO DRYWALL CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing is set for 4/2/03 at 9:00 a.m. Enter Memorandum Opinion And Order. Presbitero Drywall's motion for judgment of acquittal, motion for arrest of judgment, and motion for a new trial are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | MAR 24 2003 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| LG | courtroom deputy's initials | 03 MAR 21 PM 2:33 date mailed notice |
| | | FILED-TO Date/time received in central Clerk's Office — mailing deputy initials |

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 CR 0165 |
| v. ) | |
| ) | Judge John W. Darrah |
| PRESBITERO DRYWALL COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants, Ronald J. Presbitero ("Ronald Presbitero") and Presbitero Drywall Company, Incorporated ("Presbitero Drywall"), were charged by a thirteen-count indictment of violating 18 U.S.C. § 1027. The indictment alleged the following underlying facts. Presbitero Drywall was an employer of drywall installers and a signatory to collective bargaining agreements ("CBA") with the Chicago and Northeast Illinois District Council of Carpenters Union ("Union"). Each of the CBAs required Presbitero pay particular amounts to the Chicago District Council of Carpenters Pension, Welfare, and Apprentice and Training Program Funds ("Trust Funds") each month on behalf of employees and subcontractors covered by the CBAs. The payments were based upon the number of hours and days worked by each covered employee and subcontractor.

Each month, Presbitero Drywall was required by the CBAs to file a monthly report, the Fringe Benefits Funds Report, identifying the individual drywall installation employees and subcontractors working for Presbitero Drywall and the number of hours worked by each and to submit to the Trust Funds each month all the required contributions to the Trust Funds for these

employees and subcontractors.

The Trust Funds were required to publish and file annual financial reports, known as Form 5500 Reports, with the United States Secretary of Labor pursuant to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA). ERISA also required that the Trust Funds keep and maintain all documents necessary to verify, explain, clarify, and check for accuracy and completeness the annual Form 5500 Reports. The Trust Funds caused an audit to be conducted to verify the accuracy of Presbitero's monthly Fringe Benefits Funds Reports. During the audit, the Defendants concealed information that prevented the auditors from determining the actual number of hours worked by the drywall installation workers.

Four counts charged that the Defendants engaged in a mail fraud scheme to defraud the Trust Funds and the members of the Union who were participants in the Trust Funds. The indictment charged that the Defendants knowingly underreported the number of hours worked by drywall installation employees and the amount of pension and welfare benefits due to the Trust Funds. Nine counts of the indictment charged that the Defendants knowingly caused the filing of false pension and welfare benefit plan information with the United States Department of Labor and caused false information to be included in records required to be maintained by employee benefit plans. The indictment charged that the Defendants caused false information to be filed with the Department of Labor by submitting false information to an auditor for the Trust Funds and by submitting false monthly Fringe Benefit Fund Reports to the Union Trust Funds.

The case was tried before a jury in October and November 2002. Prior to the jury receiving the case, Counts I and Counts VI through XIII were dismissed. Accordingly, Counts II through V remained. Count II alleged that the Defendants knowingly made false monthly Fringe Benefits

Funds Reports for the months of July 1995 through June 1996 concerning required contributions to the Chicago District Council of Carpenters Pension Fund ("Pension Fund"). Count III alleged that the Defendants knowingly made false monthly Fringe Benefits Funds Reports for the months of July 1995 through June 1996 concerning required contributions to the Chicago District Council of Carpenters Welfare Fund ("Welfare Fund"). Count IV alleged that the Defendants knowingly made false monthly Fringe Benefits Funds Reports for the months of July 1996 through June 1997 concerning required contributions to the Pension Fund. Count V alleged that the Defendants knowingly made false monthly Fringe Benefits Funds Reports for the months of July 1996 through June 1997 concerning required contributions to the Welfare Fund.

On November 7, 2002, a jury returned a verdict of not guilty on the remaining counts in favor of Ronald Presbitero. The jury returned a verdict of guilty on Counts II through V against Presbitero Drywall. Presently before the Court is Presbitero Drywall's Motion for Acquittal, Motion for Arrest of Judgment or, in the alternative, Motion for a New Trial.

Presbitero Drywall first moves for a judgment of acquittal, arguing that the credible trial evidence established that the underreported hours were attributable to subcontractors and that Presbitero Drywall did not have to report hours worked by these subcontractors.

A motion for judgment of acquittal should only be granted if there is insufficient evidence to sustain the conviction. *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (*O'Hara*). The evidence is viewed in the light most favorable to the prosecution, and a conviction will only be overturned if the record contains no evidence on which a rational jury could have returned a guilty verdict. *See O'Hara*, 301 F.3d at 569-70.

Presbitero Drywall's argument, that the subcontractors' work hours did not have to be

reported, is only reached if there was no competent evidence for the jury to determine that all of the work performed for Presbitero Drywall was actually done by employees of Presbitero Drywall.

At trial, the Government introduced evidence controverting Presbitero Drywall's purported use of such contractors. Two Presbitero Drywall foremen testified that they had no knowledge of subcontractors' working on job sites. All of the locations listed as the addresses for the alleged subcontracting companies were residential locations in residential neighborhoods. All of the invoices purportedly showing billings from the subcontractors to Presbitero Drywall were ordered by Presbitero Drywall from a printing company that had done business with Presbitero Drywall for twenty years. The format of the invoices were all different but were ordered and approved by Presbitero Drywall. The invoices produced by Presbitero Drywall were not folded and showed no signs of having been prepared, mailed, and sent to Presbitero Drywall. In addition, nearly $6 million in Presbitero Drywall checks purporting to pay subcontracting invoices were all cashed at a currency exchange pursuant to an agreement worked out between the currency exchange owner and Ronald Presbitero, the president of Presbitero Drywall.

Based on this evidence, a rational trier of fact could have found that the alleged subcontractors did not exist and that the work done by these alleged subcontractors was actually performed by Presbitero Drywall employees and was required to be reported. Accordingly, Presbitero Drywall's Motion for Judgment of Acquittal is denied.

Assuming argumendo, that the jury may have determined that Presbitero Drywall had hired subcontractors, a rational trier of fact could have found that Presbitero Drywall was required to report the hours worked by the subcontractors to the Trust Funds.

At trial, several exhibits were introduced into evidence. These exhibits included the CBA,

the Pension Trust Agreement, the Welfare Trust Agreement, and several benefit reports. The CBA provides that an employer cannot subcontract any work coming within the jurisdictional claims of the Union that is not covered by a CBA with the Union. If an employer that is bound by the CBA subcontracts any work covered by the CBA who is not a signatory to the CBA, the employer must require the subcontractor to be bound by the provisions of the CBA or the employer must maintain daily records of the subcontractors hours and be liable for payments to the Trust Funds. Furthermore, Articles XII and XIII require the employer to furnish the Trust Funds with information, including the names of employees, employee classifications, wages and/or hours worked, and other information as may be required for the proper administration of the Trust Funds.

The individual Trust Fund agreements also provide that contributions "accrue with respect to all hours worked by any employee, including but not limited to, journeymen, foremen or apprentices or for any person doing work within the jurisdiction of the [Union] ...." Furthermore, the benefit reports state that the signatory certifies that the hours reported on the benefit reports are "a true and complete report of hours worked by foremen, journeymen and apprentice carpenters represented in collective bargaining ... We hereby agree to be bound by and ratify, confirm and adopt all of the provisions of the [CBA] and the [Trust Agreements]...."

Based on this evidence, a rational trier of fact could have determined that Presbitero Drywall may have hired subcontractors but that Presbitero Drywall was required to report the hours they worked based on the CBA, the Pension Trust Agreement, the Welfare Trust Agreement, and the benefit reports. Accordingly, Presbitero Drywall's Motion for a Judgment of Acquittal based on its argument that it need not report hours worked by subcontractors is denied.

Presbitero Drywall next argues that a new trial is required because it was unfairly prejudiced

5

by the Government's introduction of other bad acts evidence at trial. In summary, Presbitero Drywall makes the following argument. The Government initially contended that Presbitero Drywall was obligated to report to the Funds, by way of the monthly Fringe Benefits Reports, all the hours worked throughout ten or more counties. The Government stated this contention to the jury in its opening statement. However, the Government's first witness testified that Presbitero Drywall was only required to report the work done in Cook, Lake, and DuPage counties. Despite this testimony, the Government persisted in its contention that Presbitero Drywall was required to disclose work done in multiple counties outside of Cook, Lake, and DuPage counties until the Government finally conceded that Presbitero Drywall was only required to report work done in Cook, Lake, and DuPage counties. However, by this time, the jury had already learned that Presbitero Drywall had done work in other counties and had allegedly not reported such work. The Government's ultimate concession on this issue could not "unring the bell" of these alleged other wrong acts.

A court may grant a motion for a new trial "if the interests of justice so require." *See* Fed. R. Crim. P. 33. The decision to grant such a motion is within the sound discretion of the trial court. *See United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (*Reed*). A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuziar*, 881 F.2d 466, 470 (7th Cir. 1989). In making this analysis, the court may not re-weigh the evidence and set aside a verdict because the court feels that some other result would be more reasonable. "The evidence must preponderate heavily against a verdict, such that it would be a miscarriage of justice to let the verdict stand." Such motions are granted "sparingly and with caution, doing so only in those really 'exceptional cases'". *Reed*, 875 F.3d at 113, quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985).

Regarding Presbitero Drywall's specific claim that introduction of other bad acts requires a new trial, Federal Rule of Evidence 404(b) is controlling. The Rule requires the government, upon request by the defendant, to provide notice in advance of trial of the general nature of any evidence of other crimes, wrongs or bad acts which the government intends to offer to prove notice, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *See* Fed. R. Evid. 404(b). However, evidence that is "so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime" is excluded from Rule 404(b)'s prohibition against other acts evidence admitted to show "action in conformity therewith" and may be admitted at trial. *See United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002) (*Thompson*). If the evidence is "intricately related", "connected", or "intertwined" in this manner, the court does not abuse its discretion by admitting such evidence. *See Thompson*, 286 F.3d at 968. Acts satisfy the inextricably intertwined doctrine if they complete the story of the crime, if their absence would create a chronological or conceptual void in the story of the crime, or if they are so blended or connected that they incidentally involve or explain the circumstances surrounding or tend to prove any element of the crime charged. *See United States v. Gibson*, 170 F.3d 673, 681 (7th Cir. 1999), quoting *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995).

The challenged evidence was intricately related and intertwined with the evidence that explained the circumstances surrounding, or tending to prove, the crimes Presbitero Drywall was charged with.

Presbitero Drywall also contends that the evidence of false statements or omissions at issue with respect to counts that were eventually dismissed also constituted evidence of other wrong acts

7

that were improperly placed before the jury in violation of Rule 404(b).

Specifically, the Government introduced evidence of alleged fraud and deceit during a March through May 1997 audit. This evidence was introduced in an attempt to prove the Government's first count, which focused on the audit. Evidence was also introduced to prove Counts X through XIII, the mail fraud counts, which were later dismissed. The introduction of this evidence attempted to prove that monthly submissions of false remittance reports for the period of January 1995 through August 1997. As to dismissed Counts VI through IX, evidence was introduced in an attempt to prove alleged submission of false monthly remittance reports for April through July 1997. Neither Defendant moved to restrict the admission of evidence to particular counts of the indictment, and the presently disputed evidence was admitted without objection.

Rule 404(b) is not applicable to evidence relating to dismissed counts of an indictment. *See United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996) (and cases cited within). Furthermore, all of the introduced evidence for the dismissed counts was connected and intertwined with the non-dismissed counts and was admissible as discussed above. The evidence relating to Count I was admissible as to Counts II through V to prove knowledge and criminal content. The evidence introduced to prove Counts X through XIII was admissible to prove Counts II through V -- Presbitero Drywall caused false Forms 5500 to be filed for the fiscal years 1995 and 1996 by filing false monthly remittance reports for the periods of July 1995 through June 1996 (Counts II and III) and July 1996 through July 1997 (Counts IV and V). The evidence as to Counts VI through IX was also admissible to prove charges in Counts II through IV, particularly the charges in Counts IV and V, which alleged that Presbitero Drywall caused the 1996 Form 5500 to be falsely submitted by submitting false and fraudulent remittance reports for the 1996 fiscal year. Accordingly, Presbitero

8

Drywall's Motion for a New Trial on these grounds is denied.

Presbitero Drywall next argues that the Court erred in providing several jury instructions. Jury instructions are upheld if, in their entirety, they are fair, accurate, and sufficient for the jury to understand the issues to be decided and contain a fair and accurate statement of the law. *See United States v. Jordan*, 223 F.3d 676, 690 (7th Cir. 2000).

Presbitero Drywall first argues that the Government's Instruction No. 41 was incorrectly submitted to the jury because the information found within the instruction should have been presented at trial rather than merely being instructed to the jury as a matter of law. The Government's Instruction No. 41 stated:

> As to Counts Two through Five documents required by Title I of ERISA to be kept as part of the records of an employee welfare benefit fund include any and all records which provide in sufficient detail the necessary basic information and data from which annual Form 5500 may be verified, explained, clarified, or checked for accuracy and completeness.

The Government's Instruction No. 41 is a paraphrase of 29 U.S.C. § 1027. As such, Instruction 41 is a statement of law, not a statement of evidentiary facts, and was properly submitted to the jury as an instruction on the law.

Presbitero Drywall argues that the inclusion of the Government's Instruction No. 42 was also in error because the instruction required the jury to find, as a matter of law, that the government had sustained its burden as to one of the elements of the offense. The Government's Instruction No. 42 stated:

> As to Counts Two through Five, under Title I of ERISA, an employee welfare benefit plan is required to publish and file a Form 5500 annually.
> Therefore, I instruct you that, as a matter of law, annual

> reports published by the Chicago District Council of Carpenters
> Pension, Health and Welfare, and Apprentice and Training Program
> Funds filed with the Secretary of Labor for the fiscal years ending
> June 30, 1995, June 30, 1996, and June 30, 1997, were documents
> required by Title I of ERISA to be published within the meaning of
> Title 18, United States Code, Section 1027.

To establish a violation of 18 U.S.C. § 1027 reporting requirements, the Government must prove that (1) the defendant made a false statement or representation of fact, (2) with the knowledge that the false statement or concealment was made in a document required to be published, and (3) the plan in question was an employee benefit welfare benefit or pension plan within the meaning of and subject to the Act. *See United States v. Palumbo Brothers, Inc.*, 145 F.3d 850, 874 (7th Cir. 1998) (*Palumbo*). This instruction did not require the jury to find, as a matter of law, that the Government had sustained its burden as to one of the elements of the alleged crime. The instruction informed the jury that the annual reports by the Funds were required to be published under ERISA. The instruction did not instruct the jury to find, as a matter of law, any of the three above elements of the crime.

Presbitero Drywall also argues that the Court erred in not providing the jury with Defendants' Instruction No. 7 because the instruction was required to fully understand the elements of the offense. Defendants' Instruction No. 7 stated: "When the 'word' concealment is used, it means a withholding of something which one knows and which one, in duty is bound to reveal."

This proposed instruction would have instructed the jury that they had to find a violation of a known duty as a basis for a conviction because such finding would constitute "wilfulness" which is not included in the statute defining the present alleged crime. *See* Jury Instructions, Seventh Circuit Committee 4.09 (1998); 18 U.S.C. § 1027; *Palumbo*, 145 F.3d at 874.

Presbitero Drywall also argues that the Court erred in not providing the jury with Defendants' Instruction No. 8 because, without the instruction, the jurors were not sufficiently apprized of the knowledge that the Defendants must have had in order to commit the charged offenses. Defendants' Instruction No. 8 stated:

> For you to find that the defendant acted "knowingly" with respect to Counts One through Five, you must find that he/it made a false statement or representation of fact with the knowledge that the false statement or concealment was made in a document required to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administration of any such plan.

At trial, the Court gave the instruction as to "knowingly", offered by the Government, which stated: "When the word 'knowingly' is used in these instructions, it means that a defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, accident, or advice of counsel. Knowledge may be proved by the defendant's conduct, and by all of the facts and circumstances surrounding the case." *See* Jury Instructions, Seventh Circuit Committee 4.06 (1999). The given instruction properly instructed the jury as to the definition of knowingly without reiterating the elements of the alleged offense as included in Defendants' proposed instruction. Accordingly, Defendants' Instruction No. 8 was properly denied.

Presbitero Drywall claims that a new trial is required because the Government failed to disclose certain exculpatory evidence.

The suppression of evidence that is favorable to an accused upon request by the Government violates due process where the evidence is material to either guilt or to punishment, irrespective of the Government's good faith. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*Brady*). The required disclosure extends to both exculpatory evidence and facts material to the impeachment of

11

Government witnesses. It attaches even in the absence of a specific request by the defendant. *See United States v. Reyes*, 270 F.3d 1158, 1166 (7th Cir. 2001) (*Reyes*). To establish an alleged *Brady* violation, the defendant must establish that: (1) the Government suppressed evidence; (2) the evidence allegedly suppressed was favorable to the defense; and (3) the evidence was material to an issue at trial. *See Reyes*, 270 F.3d at 1166.

Special Agent Helene Seltzer ("Seltzer") testified on behalf of the Government at trial. Seltzer introduced into evidence several invoices regarding work performed by alleged subcontractors for Presbitero Drywall. Prior to trial, Seltzer had interviewed Maureen Gordon ("Gordon"), a Presbitero Drywall employee, concerning these invoices. The Government did not disclose memoranda prepared by Seltzer regarding her conversations with Gordon and Gordon's attorney, Anthony Pinelli ("Pinelli").

Seltzer's memoranda reveal the following facts.

On February 26, 2002, Seltzer contacted Pinelli to inquire if he represented Gordon. Pinelli contacted Seltzer on March 4, 2002. At that time, Seltzer informed Pinelli that Gordon was the subject of a grand jury investigation. Seltzer inquired of Pinelli whether Gordon would be willing to speak with the Government about the investigation.

On March 28, 2002, Seltzer again spoke with Pinelli. Seltzer asked whether Gordon would be willing to provide information about Presbitero Drywall invoices and payments to subcontractors. Seltzer told Pinelli that she believed that "Gordon typed all of the invoices and payments to six contractors."

On April 4, 2002, Pinelli informed Seltzer that Gordon informed him that she did not type invoices for the six subcontractors but was given the invoices from Pepe Velasquez ("Velasquez"),

12

a purported subcontractor, or someone from his office. Gordon did prepare checks for the invoices, and Ronald Presbitero signed the checks.

On April 26, 2002, following Pinelli's arrangements to obtain a proffer letter, Pinelli and Gordon met with Seltzer. Gordon informed Seltzer that she began working for Presbitero Drywall in 1993. She is a full-time secretary who runs the "day-to-day operations". As part of her duties, Gordon filled out and submitted the monthly union contribution reports. As to subcontractors, Gordon stated that either Presbitero Drywall employees or subcontractors would be used to install drywall. Velasquez would arrange for the labor to install the drywall. Gordon received a separate sheet for Presbitero Drywall employees that would detail the hours each employee worked. Gordon would use this information to determine the employee's weekly pay and hours reported on the union's monthly contribution report form. She would then determine the amount that Presbitero Drywall owed to the Union funds based on the information obtained from these sheets. Gordon did not know how it was determined if subcontractors or Presbitero Drywall employees would be used to install drywall.

She further explained that Velasquez, his father, or his sister would provide her with handwritten sheets each week detailing the amount of money owed to each of the subcontractors. Gordon prepared checks for the subcontractors, and Ronald Presbitero signed the checks. Velasquez would then pick up the checks for the subcontractors as well as payroll checks for Presbitero Drywall employees.

Seltzer showed Gordon several subcontractor invoices that she identified as ones that she had prepared for some of the subcontractors that were used to install drywall from 1994 through 1997. Gordon explained that she kept blank invoices for each of the subcontractors in her desk and that,

as time permitted, she typed out the invoices for each of the weekly handwritten sheets that Velasquez or others had given her. The typed invoices were prepared no later than a month after she received the worksheet. The reason that she typed out the invoices was to simplify her record keeping of the payments made to the subcontractors.

Gordon did not think it was unusual to type the invoices, and she also typed invoices to builders for payments Presbitero Drywall would receive. In addition, such invoices were not provided to the builders because the companies did not require invoices. Such builders, without invoices, merely paid Presbitero Drywall as the work was completed. Gordon also identified several checks made payable to several subcontractors. Gordon had typed the checks, and Ronald Presbitero had signed them. In addition to the six subcontractors Gordon was questioned about, Gordon told Seltzer that Presbitero Drywall also used other companies to install drywall.

At trial, Seltzer testified regarding work performed by subcontractors for Presbitero Drywall, and several invoices regarding work performed by subcontractors was admitted into evidence. During her testimony, Seltzer stated the invoices were not folded or crinkled in any manner, and her testimony raised an obvious issue regarding the circumstances of their creation and maintenance. During closing arguments, the Government commented on the pristine condition of the invoices and suggested that the invoices were falsified documents all created at the same time.

The Government concedes that it did not tender Seltzer's reports to the Defendants. However, evidence is suppressed for purposes of *Brady* only if the Government failed to disclose evidence that it or law enforcement was aware before it was too late to be utilized and the evidence was not otherwise available to the defendant through the exercise of reasonable diligence. *See Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). The Government argues that the undisclosed evidence

was readily available to the defense because Defendants were well aware of Gordon's extensive involvement with the Presbitero Drywall operations.

In response, Presbitero Drywall argues that Gordon was not available to be interviewed by the defense prior to trial in light of the pending grand jury investigations and the ability of the Government to use any interview against her. Specifically, Presbitero Drywall argues that Gordon only agreed to speak with the Government concerning these issues after a proffer agreement had been reached. Defense counsel had no power to protect Gordon from the Government's possible prosecution or the Government's use of her statements against her in a criminal proceeding. Furthermore, defense counsel had no notice that the Government would take the position at trial that the "pristine" condition of the invoices was incriminating, and no report provided to counsel by the Government disclosed this position.

Although Presbitero Drywall claims that Gordon was not available to be interviewed by the defense prior to trial because she was under investigation beginning in March 2002, Presbitero Drywall fails to indicate when the threat of prosecution due to the investigation ceased. That is when Gordon became "available" for an interview according to Presbitero Drywall's theory. More significantly, Presbitero Drywall fails to show why this business information known to Gordon was also not available to Presbitero Drywall prior to the October 2002 trial. Presbitero Drywall and Ronald Presbitero, as Gordon's employer, were obviously aware that, for several years, Gordon was the only other employee in Presbitero Drywall's offices with Ronald Presbitero. Nor has Presbitero Drywall shown how it could have been unaware of its employee's, Gordon's, office procedures, including the procedures regrading the "invoices". Nothing prevented either Defendant from informing counsel of the so called "exculpatory" reasons for the invoice procedures used by Gordon.

Presbitero Drywall has not explained why it could not have subpoenaed Gordon to testify in the Defendants' case in chief as to her procedures in dealing with Velasquez and the purported invoices as previously related to Agent Seltzer after Seltzer raised this issue during her testimony.

Based on the above facts, the Gordon/Seltzer evidence was otherwise available to Presbitero Drywall through the exercise of reasonable diligence; and its Motion for a New Trial based on this evidence is denied.

Presbitero Drywall also argues that the Government's failure to provide copies of Michael Hroza's ("Hroza"), a Business Agent for the Chicago District Council of Carpenters, notes and reports may have constituted a *Brady* violation.

Prior to trial, the Government informed the defense that it intended to call Hroza at trial. A report tendered to the defense prior to trial made reference to Hroza having made certain observations at Presbitero Drywall job sites and having created reports of such observations. After trial began, the defense requested copies of Hroza's notes and reports. Defense received "some" of the requested documents but questions whether it received all of the documents. Hroza was not called at trial.

Based on the bare allegations above, Presbitero Drywall has failed to demonstrate that the Government suppressed evidence pertaining to Hroza, that the evidence allegedly suppressed was favorable to the defense, or that the evidence was material to an issue at trial. Accordingly, Presbitero Drywall's Motion for a New Trial based on this evidence is denied.

Presbitero Drywall summarily renews every motion and objection made at, during, and after trial, including those of Ronald Presbitero and adopted by Presbitero Drywall. Presbitero Drywall also summarily asserts that the Court erred in denying Presbitero Drywall's Motion for Judgment

of Acquittal at the close of the Government's case.

Presbitero Drywall's unsupported conclusory arguments, which do no more than reassert arguments that have been previously rejected by this Court, are insufficient to satisfy its burden to establish the essential unfairness of the trial to mandate a new trial. *See United States v. Handy*, 351 U.S. 454, 462 (1956) (defendant seeking new trial bears the burden of demonstrating essential unfairness of original trial); *United States v. Wimberly*, 60 F.3d 281, 287 (7th Cir. 1995) (perfunctory and undeveloped arguments unsupported by pertinent authority are waived); *United States v. Balistrieri*, 577 F. Supp. 1532, 1545 (E.D. Wis. 1984) (burden on defendant seeking new trial not satisfied by unsupported conclusory allegations.[1]

For the foregoing reasons, Presbitero Drywall's Motion for Judgment of Acquittal, Motion for Arrest of Judgment, and Motion for a New Trial are denied.

Dated: March 21, 2003

JOHN W. DARRAH
United States District Judge

---

[1] Presbitero Drywall's Motion for Arrest of Judgment also summarily argues that the judgment should be arrested because the Court did not have jurisdiction over the subject matter, the Court did not have jurisdiction over Presbitero, and Counts II through V failed to charge an offense. Such cursory pleading is inadequate as stated herein. Accordingly, the Motion to Arrest Judgment is denied.